IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARLEIS TROVER, individually, ] <br> and as Administrator of the Estate of ] <br> and as next-of-kin of the deceased, ] <br> DONALD GADDIS, ] <br> ] <br> Plaintiff, ] <br> ] <br> vs. ] <br> ] <br> SELECT SPECIALTY HOSPITAL -- ] <br> NASHVILLE, LLC, DR. RICHARD ] <br> TYSON, and BLESSING IFEYINWA ] <br> EMEGWAI, ] <br> ] <br> Defendants. ] | **JURY TRIAL DEMANDED** <br><br> Case No. _____ |

**COMPLAINT**

Now Comes, Plaintiff Marleis Trover, individually, and as administrator of the Estate of Donald Gaddis and as Next-of-Kin for Donald Gaddis, and for her Complaint against the Defendants, Select Specialty Hospital – Nashville, LLD, Dr. Richard Tyson, and Blessing Ifeyinwa Emegwai, she says:

1. Plaintiff, Marleis Trover ("Trover" or "Plaintiff"), is the mother and next-of-kin of the decedent Donald Gaddis ("Gaddis"), as well as the Administrator of his Estate. At all relevant times, Trover and, while living, Gaddis were residents of the State of Illinois.

2. Defendant Select Specialty Hospital – Nashville, LLC ("Select Specialty") is a Delaware Limited Liability Company which is duly authorized to do business in the State of Tennessee. Select Specialty operates a facility in Nashville, Tennessee, where it provides hospital medical care to patients in need of hospital care. From approximately April 1, 2022 to May 16, 2022, Gaddis was a patient at Select Specialty.

3. Select Specialty is a "health care provider," as that term is defined by Tenn. Code Ann. § 29-26-101(2)(A).

4. Defendant Dr. Richard Tyson ("Dr. Tyson") is a physician duly licensed to provide medical care to patients in the State of Tennessee. Between April 1, 2022 and May 16, 2022, Dr. Tyson was performing medical services as the agent of Select Specialty. Between April 1, 2022 and May 16, 2022, Dr. Tyson served as Gaddis's treating physician.

5. Dr. Tyson is a "health care provider," as that term is defined by Tenn. Code Ann. § 29-26-101(2)(A).

6. Defendant Blessing Ifeyinwa Emegwai ("Emegwai") is a respiratory therapist, duly licensed to render services as a respiratory therapist in the State of Tennessee. Emegwai provided services to Gaddis at Select Specialty. Emegwai performed said services as the agent of Select Specialty.

7. Emegwai is a "health care provider," as that term is defined by Tenn. Code Ann. § 29-26-101(2)(A).

8. This Court has subject matter jurisdiction over this action because the Plaintiff and all of the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over all Defendants because the matters described in this Complaint all arose out of each Defendant's contacts with the State of Tennessee.

10. Venue is proper in the Middle District of Tennessee because a substantial part of the events giving rise to this claim occurred in the Middle District of Tennessee.

## FACTUAL ALLEGATIONS

11. Trover is Gaddis's mother, the Administrator of his Estate, and his next of kin; accordingly, Trover is authorized under Tennessee law to bring this action for and for Gaddis's wrongful death, which took place at Select Specialty on May 16, 2022, and for her own loss of consortium.

12. At all relevant times as to the events alleged in this Complaint, Gaddis was a patient at Select Specialty's facility in Nashville, Tennessee, and Select Specialty owed Gaddis a duty of care as a patient at the Nashville facility.

13. At all relevant times, Gaddis had a physician-patient relationship with Dr. Tyson.

14. At all relevant times, Gaddis had a respiratory therapist-patient relationship with Emegwai.

15. Gaddis was a patient at the Select Specialty hospital in Nashville, Tennessee, between April 1, 2022, and May 16, 2022. Prior to his admission, Gaddis had received prolonged critical care treatment. He was admitted to Select Specialty for rehabilitation and to wean him from mechanical ventilation.

16. While Gaddis was treated at Select Specialty by Dr. Tyson and Emegwai, Gaddis experienced multiple episodes of clinical deterioration and compensation, with levels of oxygen desaturation that required constant monitoring and acute interventions.

17. On May 6, 2022, Gaddis experienced a near cardiac arrest.

18. In the early morning hours of May 13, 2022, Gaddis was found to be unresponsive.

19. At said time, it was determined that Gaddis was in cardiac arrest.

20. Gaddis survived, but he suffered a significant brain injury due to lack of oxygen, which caused him to have a brain death on May 16, 2022.

## COUNT I

Now Comes, Marleis Trover, individually, and as administrator of the Estate of Donald Gaddis and as Next-of-Kin for Donald Gaddis, and for COUNT I of her Complaint against Dr. Richard Tyson, she says:

21. Plaintiff incorporates herein as if fully stated herein the allegations set forth in paragraphs 1 through 20 above.

22. Dr. Tyson owed Gaddis a duty to provide appropriate care and treatment while Gaddis was a patient at Select Specialty.

23. Dr. Tyson failed to comply with the applicable recognized standard of acceptable professional practice ("standard of care") when he provided care and treatment to Gaddis while Gaddis was a patient at Select Specialty.

24. Dr. Tyson's failure to comply with the applicable standard of care includes, but is not limited to:

   a. Prior to May 13, 2022, he failed to take the necessary steps to ensure that Gaddis was closely monitored at all times given Gaddis's prior episodes of clinical deterioration;

   b. Prior to May 13, 2022, he should have taken steps to move Gaddis to another facility which could have provided Gaddis with the monitoring required; and

   c. Prior to May 13, 2022, he should have taken steps to prevent the sleeve on Gaddis's tracheostomy from moving in order to prevent the sleeve from cutting off Gaddis's oxygen supply.

25. All of the above acts of negligence constitute reckless conduct.

26. As a direct and proximate result of Dr. Tyson's negligent and/or reckless actions and/or omissions, Gaddis became brain dead on May 13, 2022 and subsequently died on May 16, 2022.

27. As a direct and proximate result of Dr. Tyson's negligent and/or reckless actions and/or omissions, Trover lost her son and suffered a loss of consortium.

## COUNT II

Now Comes, Marleis Trover, individually, and as administrator of the Estate of Donald Gaddis and as Next-of-Kin for Donald Gaddis, and for COUNT II of her Complaint against Blessing Ifeyinwa Emegwai, says:

28. Plaintiff incorporates herein as if fully stated herein the allegations set forth in paragraphs 1 through 20 above.

29. Emegwai owed Gaddis a duty to provide appropriate care and treatment while Gaddis was a patient at Select Specialty.

30. Emegwai failed to comply with the applicable recognized standard of acceptable professional practice ("standard of care") when she provided care and treatment to Gaddis while Gaddis was a patient at Select Specialty.

31. Emegwai's failure to comply with the applicable standard of care includes, but is not limited to:

   a. Prior to May 13, 2022, she failed to take the necessary steps to ensure that Gaddis was closely monitored at all times given Gaddis's prior episodes of clinical deterioration; and

    b.       Prior to May 13, 2022, she should have taken steps to prevent the sleeve on Gaddis's tracheostomy from moving in order to prevent the sleeve from cutting off Gaddis's oxygen supply.

32. All of the above acts of negligence constitute reckless conduct.

33. As a direct and proximate result of Emegwai's negligent and/or reckless actions and/or omissions, Gaddis became brain dead on May 13, 2022, and subsequently died on May 16, 2022.

34. As a direct and proximate result of Emegwai's negligent and/or reckless actions and/or omissions, Trover lost her son and suffered a loss of consortium.

## COUNT III

Now Comes, Marleis Trover, individually, and as administrator of the Estate of Donald Gaddis and as Next-of-Kin for Donald Gaddis, and for COUNT III of her Complaint against Select Specialty, says:

35. Plaintiff incorporates herein as if fully stated herein the allegations set forth in paragraphs 1 through 20 above.

36. Select Specialty owed Gaddis a duty to provide appropriate care and treatment while Gaddis was a patient at Select Specialty.

37. Select Specialty failed to comply with the applicable recognized standard of acceptable professional practice ("standard of care") when it provided care and treatment to Gaddis while Gaddis was a patient at Select Specialty.

38. Select Specialty, individually and through it agents and/or employees, Dr. Tyson and Emegwai, and other agents and/or employees who were responsible for Gaddis's treatment and care failed to comply with the applicable standard of care all of the following ways:

a. Prior to May 13, 2022, Select Specialty through its agents and/or employees failed to take the necessary steps to ensure that Gaddis was closely monitored at all times given Gaddis's prior episodes of clinical deterioration;

b. Prior to May 13, 2022, Select Specialty through its agents and/or employees should have taken steps to prevent the sleeve on Gaddis's tracheostomy from moving in order to prevent the sleeve from cutting off Gaddis's oxygen supply;

c. Prior to May 13, 2022, Select Specialty should have notified Gaddis that it was not going to closely monitor Gaddis's condition so as to enable Gaddis to move his treatment to another facility; and

d. Prior to May 13, 2022 and given prior episodes of clinical deterioration, Select Specialty should have given its agents and/or employees appropriate training to enable them to treat Gaddis in a manner that met the standard of care.

39. All of the above acts of negligence constitute reckless conduct.

40. As a direct and proximate result of Select Specialty's negligent and/or reckless actions and/or omissions, Gaddis became brain dead on May 13, 2022, and subsequently died on May 16, 2022.

41. As a direct and proximate result of Select Specialty's negligent and/or reckless actions and/or omissions, Trover lost her son and suffered a loss of consortium.

## TENNESSEE NOTICE AND GOOD FAITH REQUIREMENTS

42. The Plaintiff, through counsel, complied with the provisions of Tenn. Code Ann. § 29-26-121 requiring individuals asserting a potential health care liability claim to give written notice of such potential claim to each health care provider that will be a named Defendant at least 60 days prior to filing a complaint ("Pre-Suit Notice" or "Notice").

43. The Plaintiff provided Notice to Dr. Tyson at least 60 days before filing this suit.

44. The Plaintiff provided Notice to Emegwai at least 60 days before filing this suit.

45. The Plaintiff provided Notice to Select Specialty at least 60 days before filing this suit.

46. On or about May 5, 2023, Notices were given to Dr. Tyson, Emegwai, and Select Specialty, in accordance with Tenn. Code Ann. § 29-26-121.

47. The Declaration of Darrell Dunham and supporting documentation demonstrating compliance with regard to the Notice requirements are attached to this Complaint as Exhibit A.

48. The Complaint was filed more than 60 days after May 5, 2023.

49. The Complaint was filed more than 60 days after Pre-Suit Notice was sent.

50. The Defendants have had the opportunity to review the facts of this matter between the time of their receipt of Pre-Suit Notice and the filing of this Complaint.

51. None of the Defendants or any agent acting on their behalf ever communicated to counsel for Plaintiff any inability or problem with obtaining or reviewing the pertinent medical records, which counsel for Plaintiff provided directly or provided access to via an appropriate HIPAA-compliant release for the Defendant to use to obtain records.

52. In accordance with Tenn. Code Ann. § 29-26-122, Plaintiff's counsel has consulted with one or more experts who provided a signed written statement confirming that upon information and belief they are competent under Tenn. Code Ann. § 29-26-115 to express opinions in this case and believe, based on the information available from medical records concerning the care and treatment of the Deceased, that there is a good faith basis to maintain this action consistent with the requirements of Tenn. Code Ann. § 29-26-115 ("good faith

requirement"). The Certificate of Good Faith demonstrating compliance with the good faith requirement is attached to this Complaint as Exhibit B.

## CAUSATION AND DAMAGES

53. Plaintiff incorporates as if fully stated herein the allegations set forth in paragraphs 1 through 20 above.

54. As a direct and proximate result of the negligence of Defendants and their agents and employees, Gaddis suffered injuries that he would not otherwise have incurred, including but not limited to his untimely death.

55. This lawsuit seeks all compensatory damages available in Tennessee, including economic damages and non-economic damages. These requested damages include, but are not limited to, medical expenses, lost earnings, lost earning capacity, physical pain and suffering, and emotional pain and suffering.

56. This lawsuit seeks punitive damages for the acts described herein involving a conscious disregard for the known risk of harm posed to Gaddis, which constitutes reckless conduct.

57. Defendants are not protected by any statutory cap on punitive damages because Tennessee's statutory cap on punitive damages is unconstitutional.

58. Alternatively, Tenn. Code. Ann. § 29-39-102 is unconstitutional because it violates the right to trial by jury as set forth in both the United States and Tennessee Constitutions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Plaintiff be awarded fair and reasonable damages, including compensatory damages as determined by this Court, but in no event less than $5,000,000.00, and punitive damages as determined by this Court by in no event less than $15,000,000.00.

2. Plaintiff be awarded her costs of suit;

3. That costs of the suit be taxed to Defendants;

4. That prejudgment interested be awarded to Plaintiff for economic damages;

5. That Plaintiff be given such additional relief at this Court deems to be just and proper.

PLAINTIFF DEMANDS A JURY TRIAL.

Dated: July 12, 2023

    Respectfully Submitted,

    **MCKELLAR LAW GROUP, PLC**

    /s/ Andrea Taylor McKellar
    Andrea Taylor McKellar, BPR #019618
    Pooja Bery, BPR #038652
    117 28th Avenue N
    Nashville, TN 37203
    T: (615) 866-9699
    F: (615) 866-1278
    andie@mckellarlawgroup.com
    pooja@mckellarlawgroup.com

    *Counsel for Plaintiff*

    Darrell Dunham, IL BPR #3124260
    308 West Walnut Street
    Carbondale, IL 62901
    T: (618) 549-9800
    F: (618) 549-9805
    darrell.dunham@gmail.com

    *Motion for Admission Pro Hac Vice Forthcoming*